1:26-cr-00568
Judge John Robert Blakey
Magistrate Judge Gabriel A. Fuentes
RANDOM/ CAT 3

FILED
10/29/2026
VW
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>UNNECIA GATHRIGHT | No.<br><br>Violation: Title 18, United States Code, Section 1343 |

**COUNTS ONE THROUGH TWO**

The SPECIAL JANUARY 2026 GRAND JURY charges that:

1. At times material to this indictment:

***The Small Business Administration***

a. The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

***The Paycheck Protection Program***

b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietors for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). Congress subsequently authorized an additional $465 billion in funding for PPP loans, for a total of about $814 billion.

d. To obtain a PPP loan, a business, sole proprietor, or self-employed individual submitted a PPP loan application, which was signed by the applicant or an authorized representative of the business. The PPP loan application required the applicants to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, proprietorship, or individual. In the application, businesses, sole proprietors, and self-employed individuals were required to provide, among other things, their number of employees and average monthly payroll or gross income. These figures were used to calculate the applicant's eligibility and the amount of money the business, sole proprietor, or self-employed individual could receive under the PPP. Applicants were also required to make good faith certifications, including that the business entity was in operation on February 15, 2020, and that economic uncertainties had necessitated their loan requests for continued business operations.

e. To gain access to funds through the PPP, businesses, sole proprietorships, and self-employed individuals applied to lenders, and loan service providers participating in the PPP and, if approved, received the loans from lenders, either directly or through loan service providers.

f. Businesses, sole proprietors, and self-employed individuals that obtained first draw PPP loans and used the full loan amount were allowed to obtain additional funds through the PPP by submitting a Second Draw Borrower Application Form ("Second Draw Application"), which was signed by the applicant or an

authorized representative of the business. The Second Draw Application required the applicants to again acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, and again provide their number of employees and average monthly payroll or gross income. These figures were again used to calculate the applicant's eligibility and the amount of money the business, sole proprietor, or self-employed individual could receive under the PPP. Applicants were again required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations and that the applicants had used the full amount of the initial PPP loan only for eligible expenses.

g. Participating lenders, loan service providers, and the SBA required applicants for PPP loans to provide truthful information about the sole proprietorship, self-employed individual, or business and its owner, including truthful information about the applicant's payroll, income, operating expenses, and how the PPP loan would be used, which information was material to (i) lenders' approval, terms, and funding of loans and (ii) the SBA's decision to guarantee the loans.

***Defendant and Fictitious Entity***

h. Defendant UNNECIA GATHRIGHT was a resident of Bolingbrook, Illinois.

### *Loan Service Provider and Lender*

i. Loan Service Provider A was a financial technology company which processed PPP applications on behalf of PPP lenders.

j. Lender A was a lender which funded PPP loans to approved borrowers.

### *The Scheme to Defraud*

2. Beginning in or around April 2021, and continuing through in or around May 2021, in the Northern District of Illinois, and elsewhere,

UNNECIA GATHRIGHT,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for PPP funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that GATHRIGHT, for the purpose of fraudulently obtaining approximately $41,666 in PPP funds, submitted approximately two applications for loans under the PPP Program, on behalf of a sole proprietorship purportedly owned and operated by defendant, (the "Fictitious Entity"), which applications contained materially false statements and misrepresentations concerning, among other things, the Fictitious Entity's gross income, type of business, and existence as a business with ongoing operations.

### *The PPP Loans*

4. It was further part of the scheme that GATHRIGHT prepared and submitted to Loan Service Provider A two PPP loan applications on behalf of the Fictitious Entity, in which applications GATHRIGHT falsely and fraudulently represented that the Fictitious Entity was in operation on February 15, 2020, that all PPP loan proceeds would be used only for business related purposes, that the Fictitious Entity had been established in 2018, that the business was covered by North American Industry Classification System ("NAICS") code 561499, corresponding to "business support services," and that the business had gross income in 2019 of $106,600. GATHRIGHT knew at the time that she did not operate a sole proprietorship providing business support services that was in operation on February 15, 2020, that she did not operate a business that generated $106,600 in revenue in 2019, and that she intended to use the loan funds for her personal use and benefit.

5. It was further part of the scheme that, to substantiate the claimed gross income of the Fictitious Entity, GATHRIGHT submitted with her application a copy of a false IRS Form 1040, Schedule C that fraudulently represented that the Fictitious Entity had approximately $106,600 in gross income in 2019 and that the Fictitious Entity had $10,350 in total expenses in 2019. GATHRIGHT knew at the time that the Form Schedule C was fraudulent, and that the Fictitious Entity had earned no income for which federal taxes were paid during 2019.

6. It was further part of the scheme that, through the submission of the false and fraudulent PPP loan applications, GATHRIGHT caused Lender A to disburse approximately $41,666 in PPP loan proceeds into a bank account that she controlled.

7. It was further part of the scheme that GATHRIGHT used the PPP funds that Lender A disbursed based on the fraudulent PPP applications to make cash withdrawals, to purchase goods and services, and to gamble, all for her personal use and benefit.

8. It was further part of the scheme that GATHRIGHT misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

9. On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, GATHRIGHT, as set forth below, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| Count | Date | Description of Act |
|---|---|---|
| One | April 27, 2021 | An electronic transfer of funds in the amount of approximately $20,833 from Lender A to a Chase Bank account ending in -0208, which funds represented the proceeds of a PPP loan to a sole proprietorship in the name of "UNNECIA GATHRIGHT" |

| Count | Date | Description of Act |
|---|---|---|
| Two | May 19, 2021 | An electronic transfer of funds in the amount of approximately $20,833 from Lender A to a Chase Bank account ending in -0208, which funds represented the proceeds of a PPP loan to a sole proprietorship in the name of "UNNECIA GATHRIGHT" |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2026 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Sections 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to:

a. a personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Section 1343, estimated to be approximately $41,666.

3. If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the

United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

______________________________
FOREPERSON

______________________________
Signed by Matthew Getter, on behalf of the
UNITED STATES ATTORNEY